IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FACILITY WIZARD SOFTWARE, INC.,          )
                                         )
                    Plaintiff,           )        No.  08 C 5382
         v.                              )
                                         )        Judge Robert W. Gettleman
SOUTHEASTERN TECHNICAL SERVICES,         )
LLC d/b/a Capital Project System Services, LLC, )
                                         )
                    Defendant.           )
_____)
                                         )
THE CHARLOTTE-MECKLENBERG                )
HOSPITAL AUTHORITY,                      )
                                         )
                    Intervening-Plaintiff, )
                                         )
         v.                              )
                                         )
FACILITY WIZARD SOFTWARE, INC.,          )
                                         )
                    Defendant.           )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Facility Wizard Software, Inc. ("FWS") has brought a five count complaint

against defendant Southeastern Technical Services, L.L.C. d/b/a Capital Project System

Services, LLC ("CPSS") alleging breach of contract (Count I), violation of the Illinois Trade

Secrets Act, 765 ILCS § 1065/1 *et. seq.* (Count II); violation of the North Carolina Trade Secrets

Protection Act, N.C. Gen. Stat. § 66-152, *et. seq.* (Count III); deceptive and unfair trade

practices, N.C. Gen. Stat. § 75-1.1 *et. seq.* (Count IV); and unfair competition under North

Carolina Common Law (Count V).  Defendant CPSS has moved to strike and dismiss FWS's

North Carolina-based claims (Counts III-V) under Fed. R. Civ. P. 12(f) because FWS's claims

arise from a contract that is governed by an Illinois choice of law provision, and for failure to state a claim under Rule 12(b)(6).

Defendant CPSS, in turn, has brought two counterclaims against plaintiff FWS for breach of contract (Count I) and rescission (Count II). FWS has moved to dismiss both counterclaims under Rule 12(b)(6) for failure to state a claim.

Intervening-plaintiff The Charlotte-Mecklenburg Hospital Authority ("CMHA") has brought a four-count intervening complaint against FWS alleging breach of contract (Count I); deceptive and unfair trade practices, N.C. Gen. Stat. § 75-1.1, (Count II); misappropriation of trade secrets, N.C. Gen. Stat. § 66-152 (Count III); and common law unfair competition (Count IV).[1]

FWS has brought counterclaims against intervening-plaintiff CMHA for tortious interference with contract (Count I); breach of a master license agreement (Count II); violation of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et. seq.* (Count III); deceptive and unfair trade practices, N.C. Gen. Stat. § 75-1.1 *et. seq.* (Count IV); and unfair competition under North Carolina common law (Count V). Intervening-plaintiff CMHA has moved to dismiss FWS's counterclaim for breach of contract (Count II) under Rule 12(b)(6) for failure to state a claim. The court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332, on grounds of diversity.

For the following reasons: defendant CPSS's motion to dismiss plaintiff FWS's North Carolina-based counterclaims is granted; FWS's motion to dismiss CPSS's counterclaims for

---

[1]CMHA filed its original action in North Carolina on October 8, 2008. Upon FWS's motion to transfer, the action was transferred to the Northern District of Illinois and consolidated with FWS's action against CPSS.

breach of contract and rescission is denied; and intervening-plaintiff CMHA's motion to dismiss FWS's breach of contract counterclaim is denied.

**RELEVANT FACTS**[2]

This case arises from various business dealings that have failed to meet any of the parties' expectations and have caused their business relationship to turn acrimonious.

Plaintiff FWS designs and sells business software, including Projecto, a project management and tracking program. In May 2003, FWS and CMHA, the largest healthcare system in the Carolinas, entered into a "Master Hardware, Software License and Services Agreement" ("License Agreement"), through which FWS issued fifty "perpetual, non-exclusive, non-transferrable" licenses to CMHA for CMHA's employees to "install and use" Projecto, among other programs. The License Agreement also permitted use of the licenses by CMHA's affiliated facilities. FWS also provided maintenance and support services and continued to do so over the next four years, during which time CMHA acquired at least an additional 100 licenses. CMHA used Projecto to manage construction and facilities projects at CMHA-owned, operated or affiliated hospitals. Eventually, CMHA expressed interest in expanding its capital project management services nationally, beyond CMHA and the health-care industry. Such expansion efforts became known as the "National Initiative."

---

[2]The following facts are obtained from the allegations in the second amended complaint and the parties' counterclaims, intervening claims, and attached exhibits, which the court accepts as true for purposes of the motion to dismiss.

In December 2006, FWS and CMHA-affiliate CPSS[3] signed a Dealer Agreement whereby CPSS would serve as a non-exclusive, independent dealer for FWS products (including Projecto), identify and register prospective customers, and solicit purchase orders for the products. The products at issue were identified in Exhibit A to the Dealer Agreement. According to the Agreement, FWS would provide software licenses for the products and bear exclusive responsibility for the design, development, supply, production, and performance of the products. FWS was free to modify, add, or delete products from Exhibit A at any time, by giving not less than thirty (30) days' prior written notice to CPSS. The Dealer Agreement also contained a confidentiality provision governing the disclosure of any confidential and proprietary information Facility Wizards shared with CPSS. Specifically, CPSS was prohibited from "caus[ing] its employees and independent contractors [to use] the Confidential Information for any purpose other than performing its duties pursuant to [the] Agreement." CPSS was also prohibited from "engag[ing] in other business activities" such as the "sale…of facility management software or other software competitive to the [products listed in Exhibit A] without Facility Wizards [sic] prior written approval." Plaintiff FWS alleges that, in anticipation of the Dealer Agreement and after the Agreement's execution, it disclosed confidential and trade secret information, including information about Projecto's source code, customer information, and FWS's business strategies to CPSS.

Defendant CPSS and intervening-plaintiff CMHA allege that, in connection with the Dealer Agreement, they disclosed confidential information such as product development and

---

[3]CPSS, along with CMHA, assigns, develops, operates, and maintains information technology systems to manage health care services operations and facilities.

marketing strategies, including lists of prospective customers. They also allege that FWS breached the Agreement by, in part, failing to complete the design, development, supply, or production of successor Projecto software programs, such as Projecto 6.0.

About one month prior to the execution of the Dealer Agreement, the executive director of CMHA's Facilities Management Group informed FWS of plans to replace Projecto with a new program, dubbed "eCATS II," for its internal use only. Despite its intentions to develop a new program for internal use, CMHA re-confirmed that the National Initiative would involve Projecto, particularly Projecto 6.0.

The Dealer Agreement was terminated on March 18, 2008. In July 2008, FWS learned that CPSS was about to market and sell a product that would compete with Projecto. FWS has alleged that the competing product, eCATS II, is identical or substantially similar to Projecto in the functions that it performs and because it was based on and derived from Projecto. FWS contends that CMHA and CPSS had access to Projecto's source code, logic flow, and software structure and improperly used this information to develop eCATS II. These allegations are the basis for FWS's claims against CMHA and CPSS. CMHA and CPSS allege that FWS continued to develop successor Projecto software and incorporate CMHA and CPSS's confidential and proprietary information, even after the Dealer Agreement was expressly cancelled, which conduct is the basis for CMHA and CPSS's trade secret-based claims.

**DISCUSSION**

## I.     LEGAL STANDARDS

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, or scandalous

matter." Cumis Ins. Soc. v. Peters, 983 F. Supp. 787, 798 (N.D.Ill. 1997).  A movant must show

that the allegations are devoid of merit, unworthy of any consideration, and unduly prejudicial.

Id.  A motion to strike is generally disfavored.  Heller Fin., Inc. v. Midwhey Powder Co., 883

F.2d 1286, 1294 (7th Cir. 1989).

 The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to

decide the merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice

pleading requires only that the plaintiff "set out in her complaint a short and plain statement of

the claim that will provide the defendant with fair notice of the claim." Scott v. City of Chicago,

195 F.3d 950, 951 (7th Cir. 1999). When ruling on a motion to dismiss, the court must accept all

factual allegations in the complaint as true and draw all reasonable inferences in favor of the

plaintiff. Szumny v. Am. Gen. Fin., Inc., 246 F.3d 1065, 1067 (7th Cir. 2001).  Further, the court

will not consider documents or other materials beyond those attached to or referred by the

complaint itself.  See FED. R. CIV. P. 12(d); see also Scibetta v. Rehtmeyer, Inc., No. 04C5246,

2005 WL 331559, at *1-*2 (N.D.Ill. Feb. 9, 2005) (considering contracts attached to the

plaintiff's complaint, but not exhibits attached to a motion to dismiss) (citing Wright v. Assoc.

Ins. Cos., 29 F.3d 1244, 1248 (7th Cir. 1994)).  To survive a Rule 12(b)(6) motion, a plaintiff

need not provide detailed factual allegations, but must provide "more than labels and

conclusions, and a formulaic recitation of the elements of the cause of action." Bell Atl. Corp. v.

Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief

above the speculative level." Id. at 1965.

## II.     CPSS'S MOTION TO STRIKE AND DISMISS

Defendant CPSS moves to strike and dismiss Counts III (Violation of North Carolina Trade Secrets Protection Act), IV (Deceptive and Unfair Trade Practices under N.C. Gen. Stat. § 75-1.1 *et. seq*.), and V (North Carolina Common Law Unfair Competition) because it contends that Illinois law, not North Carolina law, governs FWS's contract <u>and</u> tort claims arising from the Dealer Agreement.[4]

### A.     Choice of Law Analysis

Before evaluating the merits of CPSS's motion, the court must determine what substantive law applies.  In diversity cases, the court applies the choice of law doctrines of the state in which the court sits (in this case Illinois).  <u>See</u> <u>Echo, Inc. v. Whitson Co.</u>, 52 F.3d 702, 706 (7th Cir. 1995) (citing <u>Klaxon v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, (1941)).  "Illinois courts honor a contractual choice of law clause provided that (1) it does not contravene a fundamental policy of Illinois and (2) the state chosen bears a reasonable relationship to the parties or the transaction."  <u>LaSalle Bank Nat'l Assoc. v. Paramont Props.</u>, 588 F. Supp. 2d 840, 849 (N.D.Ill. 2008).  In the instant case, the parties do not dispute the validity of the choice of law provision.  Therefore, the court will give effect to the provision.

The parties do not dispute that Illinois law governs their contract claims, but FWS contends that the parties did not intend for Illinois law to govern its tort claims.  FWS asserts that because the choice of law provision is limited to "th[e] [Dealer] Agreement and all rights and obligations hereunder" it does not apply to trade-secret based claims that it asserts are based on

---

[4]CPSS also contends that FWS violated Fed. R. Civ. P. 15(a) when it added these claims and filed a second amended complaint.  Because the court agrees that Illinois law governs the tort-based claims, it need not reach the question whether FWS violated Rule 15(a).

separate and independent rights created by North Carolina's statutes and common law.  CPSS, in

seeking dismissal, contends that the North Carolina-based tort claims are related to the Dealer

Agreement and, therefore, are subject to Illinois law.  CPSS further contends that, because

FWS's tort claims are subject to Illinois law, they are pre-empted by the Illinois Trade Secrets

Act, 765 ILCS § 1065/8.  The parties' disagreement as to which substantive law applies thus

requires a choice-of-law analysis.

Under Illinois choice of law rules, courts must apply a two-part analysis to determine the

breadth of a choice of law provision.  Amakua Develop., L.L.C. v. Warner, 411 F. Supp. 2d 941,

955 (N.D.Ill. 2006).  First, courts examine "the breadth and language of the choice-of-law

provision to determine whether the parties intended the choice-of-law provision to govern all

claims between them."  Medline Indus. Inc. v. Maersk Medline Ltd., 230 F. Supp. 2d 857, 862

(N.D.Ill. 2002).  Courts should "look to whether the language of the provision encompasses all

rights and liabilities arising out of the transaction or solely the construction of the contract."  Id.

at 862.  Second, courts determine whether the tort claims are dependent on the contract.  Id.

"[T]ort claims that are dependent upon the contract are subject to a contract's choice-of-law

clause regardless of the breadth of the clause."  Id.  In ascertaining a tort claim's dependence on

a contract, courts consider whether: (1) the claim alleges a wrong based on the construction and

interpretation of the contract; (2) the tort claim is closely related to the parties' contractual

relationship; or (3) the tort claim could not exist without the contract.  Amakua, 411 F. Supp. 2d

at 955; see also Wireless Distribs. v. Sprintcom, No. 03C2405, 2003 WL 22175607, at *6

(N.D.Ill. Sept. 19, 2003); Birnberg v. Milk Street Residential Assocs., Nos. 02C0978, 02C3436,

2003 WL 151929, at *14 (N.D.Ill. Jan. 21, 2003).

The court finds that the breadth and language of the Dealer Agreement's choice-of-law provision expresses the parties' intent to apply Illinois law to tort claims sounding in trade secrets and unfair competition (Counts III, IV, and V). The Dealer Agreement's choice-of-law provision states as follows:

> This Agreement and all rights and obligations hereunder, including matters of construction, validity, and performance, will be governed by the substantive law of the State of Illinois without giving effect to its conflicts of law principles. All claims arising out of or relating to this Agreement or the relationship of the parties to this Agreement shall be brought in the courts sitting in or for Chicago, Illinois.

The choice-of-law provision clearly states that Illinois law shall apply to the "Agreement" and "all rights and obligations hereunder, including matters of construction, validity and performance." In the instant case, the Dealer Agreement obligates CPSS to protect FWS's confidential and proprietary information and trade secrets and not to "use the Confidential Information for any purpose other than performing its duties pursuant to this Agreement or disclose any Confidential Information…to any third person." CPSS is also obligated not to "reverse engineer, decompile or disassemble" FWS's products, including Projecto and its successor versions, or to engage in "the sale…of facility management software or other software competitive to [Facility Wizards' products]."

Thus, FWS's tort claims are based on an apparent contractual obligation (and alleged breach thereof by CPSS) not to misappropriate FWS's confidential information, including trade secrets, or to use FWS's confidential information in a manner that constitutes "deceptive and unfair trade practices" or "common law unfair competition." In other words, because FWS's claims concern CPSS's (non-)performance under the contract, the choice of law provision

clearly applies Illinois law to the "performance" of the contract. Thus, the parties intended Illinois law to apply to FWS's tort-based claims.

The choice of law provision in the instant case is distinguishable from those cited by FWS in its opposition brief. In Wireless Distribs., 2003 WL 22175607, at *6, the choice of law provision was limited to the validity, construction, and interpretation of the agreement and did not extend to matters of performance, as in the instant case. The Wireless court determined that the parties did not clearly intend the provision to apply to plaintiff's fraudulent inducement claims. In Precision Screen Machs., Inc. v. Exelon, Inc., No. 95 C 1730, 1996 WL 495564, at *2 (N.D.Ill. Aug. 26, 1996), the choice of law provision neither mentioned "all rights and obligations" nor "performance," and simply stated that, "this letter shall be governed by, and construed in accordance with, the internal laws of the State of New Jersey". Similar scenarios arose in Union Oil Co. v. John Brown E. & C., No. 94 C 4424, 1994 WL 535108 (N.D. Ill. Sept. 30, 1994) (cited by Precision Screen), LaSalle Bank Nat'l Assoc. v. Paramont Props., 588 F. Supp. 2d 840, 849-850 (N.D.Ill. 2008), and Walker v. Bankers Life & Cas. Co., No. 06 C 6906, 2007 WL 967888, at *3-*4 (N.D.Ill. Mar. 28, 2007). These courts also determined that the parties' intent was unclear.

Even if the parties' intent was unclear, the court finds that FWS's tort claims are dependent on the Dealer Agreement. FWS's tort claims allege wrongs based on the construction and interpretation of the Dealer Agreement. In the second amended complaint, FWS alleges, in part, that, (a) it was induced to provide access to its trade secrets by promises CPSS made in the Dealer Agreement, (b) CPSS promised not to compete with FWS, and (c) the Dealer Agreement restricted CPSS's use of FWS's trade secrets and ability to compete with FWS. FWS's trade

secret, deceptive and unfair trade practices, and unfair competition claims are all based on allegations concerning CPSS's (non-)performance of its contractual obligations; the claims allege wrongs based on the construction and interpretation of the contract. See e.g., Wireless Distribs, 2003 WL 22175607, at *7; Interclaim Holdings, Ltd. v. Ness, Motley, Loadholt, Richardson & Poole, 298 F. Supp. 2d 746, 762 (N.D.Ill. 2004) (finding allegations based on inducement were dependent on the contract).

Second, for the foregoing reasons, the tort claims are closely related to the parties' contractual relationship. Further, FWS's breach of contract claim, to which Illinois law applies, is based on CPSS's alleged misappropriation of trade secrets. See Tax Track Sys. Corp. v. New Investor World, Inc., No. 01C6217, 2005 WL 936638, at *8-*9 (N.D.Ill. March 24, 2005) (applying choice of law provision to misappropriation claim where breach of contract claim was based on the misappropriation).

Third, the tort claims could not exist without the contractual agreement because they are based, in part, on CPSS's acquisition of trade secrets through assurances it made in anticipation of and in the Dealer Agreement. The tort claims are also based on CPSS's alleged competitive use of the trade secrets in violation of the Dealer Agreement. For the foregoing reasons, Illinois law applies to FWS's tort-based claims. Because Illinois law controls, FWS cannot bring North Carolina statutory claims against CPSS. See M. Block & Sons v. Int'l Bus. Machs., No. 04 C 340, 2004 WL 1557631, at *7 (N.D.Ill. July 8, 2004). Further, since the parties have not identified any public policy concerns sufficient to override the choice of law provision, CPSS's motion to dismiss Counts III (Violation of North Carolina Trade Secrets Protection Act) and IV

(Deceptive and Unfair Trade Practices under N.C. Gen. Stat. § 75-1.1, <u>et</u>. <u>seq</u>.), is granted.[5]  <u>See</u>

<u>id</u>.

### B.       Pre-Emption of FWS's Common Law Tort Claim (Count V)

FWS has brought an unfair competition claim under North Carolina law (Count V).

Because the court has determined that Illinois law governs FWS's tort-based claims, FWS's

unfair competition claim is governed by Illinois, not North Carolina, law.

Section 8 of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065/8, pre-empts

FWS's unfair competition claim, because it is premised on CPSS's alleged misappropriation of

trade secrets.[6]  The ITSA was intended to codify common law claims for the misappropriation of

trade secrets.  ITSA, 765 ILCS § 1065/8 ("[T]his Act is intended to displace conflicting tort,

restitutionary, unfair competition, and other laws of this State providing civil remedies for

misappropriation of a trade secret."); <u>see also</u> <u>Tax Track Sys. Corp.</u>, 2005 WL 936638, at *9

(plaintiff's common law claims were pre-empted after the court found that Illinois, not Texas

law, governed); <u>Composite Marine Propellers, Inc. v. Van Der Woude</u>, 962 F.2d 1263, 1265 (7th

_____

[5]These claims also fail to meet the notice pleading standard of Rule 8(a)(2).  FWS fails to clearly identify to which of the four identified agreements these claims are connected.  <u>Compare</u> Second Amend. Compl. ¶ 58, which identifies four agreements and oral assurances <u>with</u> ¶ 60, which discusses the Dealer Agreement.

[6]ITSA defines a "trade secret" as information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.  ITSA, 765 ILCS § 1065/2.

(Deceptive and Unfair Trade Practices under N.C. Gen. Stat. § 75-1.1, <u>et</u>. <u>seq</u>.), is granted.[5]  <u>See</u>

<u>id</u>.

### B.       Pre-Emption of FWS's Common Law Tort Claim (Count V)

FWS has brought an unfair competition claim under North Carolina law (Count V).

Because the court has determined that Illinois law governs FWS's tort-based claims, FWS's

unfair competition claim is governed by Illinois, not North Carolina, law.

Section 8 of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065/8, pre-empts

FWS's unfair competition claim, because it is premised on CPSS's alleged misappropriation of

trade secrets.[6]  The ITSA was intended to codify common law claims for the misappropriation of

trade secrets.  ITSA, 765 ILCS § 1065/8 ("[T]his Act is intended to displace conflicting tort,

restitutionary, unfair competition, and other laws of this State providing civil remedies for

misappropriation of a trade secret."); <u>see also</u> <u>Tax Track Sys. Corp.</u>, 2005 WL 936638, at *9

(plaintiff's common law claims were pre-empted after the court found that Illinois, not Texas

law, governed); <u>Composite Marine Propellers, Inc. v. Van Der Woude</u>, 962 F.2d 1263, 1265 (7th

_____

[5]These claims also fail to meet the notice pleading standard of Rule 8(a)(2).  FWS fails to clearly identify to which of the four identified agreements these claims are connected.  <u>Compare</u> Second Amend. Compl. ¶ 58, which identifies four agreements and oral assurances <u>with</u> ¶ 60, which discusses the Dealer Agreement.

[6]ITSA defines a "trade secret" as information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.  ITSA, 765 ILCS § 1065/2.

12

Cir. 1992) ("Illinois…abolished all common law theories of misuse of [secret] information"); Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 971 (N.D.Ill. 2000) ("[F]acts constituting a misappropriation of trade secrets give rise to liability under the ITSA, but not under any other state law theory.")  Accordingly, plaintiff FWS's claim for unfair competition under North Carolina common law (Count V) is dismissed.[7],[8]

For the foregoing reasons, CPSS's motion to dismiss FWS's Counts III, IV, and V is granted.  CPSS's motion to strike is denied because CPSS has not shown how FWS's allegations were devoid of merit, unworthy of any consideration, and unduly prejudicial.

### III.    FWS's Motion to Dismiss Counts I and II of CPSS's Counterclaims

Plaintiff FWS moves to dismiss CPSS's counterclaims for breach of contract (the Dealer Agreement) (Count I) and rescission (Count II) under Rule 12(b)(6), arguing that these counterclaims fail to state claims for relief.  For the reasons discussed below, FWS's motion to dismiss is denied.

#### A.    Count I (Breach of Contract Counterclaim)

The standard to dismiss complaints, as set forth in Rule 12(b)(6), also applies to the dismissal of counterclaims.  Gordon v. Vitalis Partners, LLC, No. 07 C 6807, 2008 WL 2961258, *1 (N.D.Ill. July 31, 2008).  "A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the [counterclaimant] to

---

[7] In light of the court's dismissal of FWS's North Carolina-based claims (Counts III-V), the court need not consider whether FWS's filing of a second amended complaint, to add these claims, violated Fed. R. Civ. P. 15(a).

[8] This claim also fails to meet the notice pleading standard of Rule 8(a)(2).  FWS fails to clearly identify to which of the four identified agreements this claim is connected.

recover." Quake Const., Inc. v. Am. Airlines, Inc., 141 Ill. 2d 281, 289, 565 N.E.2d 990, 994 (Ill. 1990) (quoting Walker v. Rumer, 72 Ill. 2d 495, 502 (Ill. 1978)).  Where facts are undisputed, the interpretation of a contract is question of law.  Lewis-Connelly v. Bd. of Educ. of Deerfield Pub. Sch., 277 Ill. App. 3d 554, 557, 660 N.E.2d 283, 285 (Ill. App. Ct. 1996).  When interpreting a contract, "a court must first decide, as matter of law, whether the language of the contract is ambiguous."  Pepper Constr. Co. v. Transcontinental Ins. Co., 285 Ill. App. 3d 573, 575, 673 N.E.2d 1128, 1130 (Ill. App. Ct. 1996).  The mere fact that parties allege conflicting interpretations of the contract is not sufficient in itself to show an ambiguity.  Omnitrus Merging Corp. v. Illinois Tool Works, Inc., 256 Ill. App. 3d 31, 37, 628 N.E.2d 1165, 1170 (Ill. App. Ct. 1993).  A contract is ambiguous where the language used is susceptible to more than one reasonable meaning.  Meyer v. Marilyn Miglin, Inc., 273 Ill. App. 3d 882, 888, 652 N.E.2d 1233 (Ill. App. Ct. 1995).  If, however, the contract is susceptible to only one meaning, the court may interpret the contract without considering extrinsic evidence.  Countryman v. Indus. Comm'n, 292 Ill. App. 3d 738, 741, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997).  To state a claim for breach of contract under Illinois law, a claimant must allege: (1) the existence of a valid and enforceable contract; (2) its performance of the contract; (3) defendant's breach of the contract; and (4) that it was damaged as a result of the breach.  Priebe v. Autobarn Ltd., 240 F.3d 584, 587 (7th Cir. 2001).

In the instant case, FWS's obligations under the Dealer Agreement are in dispute.  CPSS contends that FWS breached the Dealer Agreement by, (1) "failing to design, develop, supply, or produce a successor software to Projecto" and (2) "failing to deliver products that performed

adequately." In support of its claims, CPSS points to the obligations set forth in paragraphs 3

and 9 of the Dealer Agreement (SAC, Ex. A), which state as follows:

> Paragraph 3. "Facility Wizards will bear the exclusive responsibility for determining allowances and adjustments in accounts and authorizing the return of the Products, and the <u>design</u>, <u>development</u>, <u>supply</u>, <u>production</u> and performance of the Products." (emphasis added)

> Paragraph 9. "Product Availability. Only the Products listed in Exhibit A are covered by this Agreement. Facility Wizards may at any time, <u>by giving not less than thirty (30) days' prior written notice</u> to Dealer, <u>modify</u>, add or <u>delete</u> items from the list of Products. Facility Wizards will be under no obligation to Dealer <u>to continue</u> to supply, support or maintain any Product. Facility Wizards makes no warranty of any nature to Dealer as to any of the Products." (emphasis added)

"Products" is defined as "the real estate and facility management software described on Exhibit

A." The "Products" listed on Exhibit A include "Projecto," "Projecto Plus," and "Projecto

Enterprise Software" (a/k/a "Projecto 6.0").

FWS contends that the Dealer Agreement simply required it to "pay CPSS commissions

for any FWS software CPSS was authorized to sell and did sell"; it was "not obligated to

'supply' CPSS with any particular software" much less "'design,' 'develop' or 'produce' [the

software]"[9]

Having reviewed the terms of the Dealer Agreement, the court finds that CPSS has

alleged facts sufficient to state an actionable claim for breach of contract. The terms of the

---

[9]FWS also contends that CPSS has pled itself out of court by alleging that FWS "continued to develop, market and sell successor Projecto software" after the Agreement was terminated. However, this allegation does not render CPSS's breach of contract claim meaningless. CPSS's allegations that FWS failed to produce a successor software to Projecto, as well as a successor software to Projecto that performed adequately, meets the notice pleading standard set forth in Fed. R. Civ. P. 8(a)(2). That FWS continued to develop successor Projecto software on its own, after FWS's alleged breach, does not cancel CPSS's allegations of breach of contract.

contract unambiguously state that, at the time of the Dealer Agreement's execution, the Dealer

Agreement covered all the products listed in Exhibit A, and that FWS bore exclusive

responsibility for designing, developing, supplying, producing, and ensuring the performance of

those products.  The contract also indicates that the parties intended to give FWS some flexibility

regarding the products that it would make available.  FWS was free to modify the list of

available products with no less than thirty days prior written notice to CPSS.[10]  CPSS has alleged

that FWS failed to fulfill its aforementioned obligations and that CPSS was damaged as a result.

Thus, CPSS has stated an actionable breach of contract claim.  FWS's motion to dismiss CPSS's

breach of contract counterclaim is denied.

### B.       Count II (Rescission Counterclaim)

CPSS seeks rescission of the Dealer Agreement for what it claims was a failure of

consideration.  CPSS alleges that FWS's "core promise" in the Dealer Agreement was "to

develop Projecto 6.0," and that all other promises made pursuant to the Agreement are rendered

illusory "without the main subject matter of the contract: Projecto 6.0."

Rescission is an equitable remedy and "involves a judicial termination of a party's

contractual obligations; it is a court-ordered 'unwinding' of a contract, with the goal of returning

the parties to their positions."  Jones v. Infocure Corp., 310 F.3d 529, 535 (7th Cir. 2002); see

also Int'l Ins. Co. v. Sargent & Lundy, 242 Ill. App. 3d 614, 628-29, 609 N.E.2d 842, 852-53

(Ill. App. Ct. 1993).  Contrary to FWS's contentions, the ability to exercise a reserved right to

---

[10]  Even if the Dealer Agreement is open to FWS's proffered interpretation and is,
therefore, ambiguous, the interpretation of the contract is then a question of fact, which the court
cannot determine at the motion to dismiss stage, thus necessitating denial of FWS's motion.  See
Quake Const. v. Am. Airlines, 141 Ill. 2d 281, 288-89, 565 N.E.2d 990, 994 (Ill. 1990).

terminate a contract and to seek rescission of a contract can co-exist.  See 13 CORBIN ON

CONTRACTS, § 68.9, at 250 (rev. ed., 2003) ("A reservation of a right to terminate in the absence

of breach or upon an express condition that may constitute a partial or total breach does not

displace the right to [rescind] for a total breach."); see also Manpower, Inc. v. Mason, 377 F.

Supp. 2d 672, 678-9, n.9-10 (E.D. Wis. 2005) (discussing same principle).

In addition, contrary to FWS's contentions, parties can be returned to their status quo

ante by way of remedies such as restitution and compensatory damages, even though trade

secrets and confidential information have allegedly been misappropriated.  See HENRY H.

PERRITT, JR., TRADE SECRETS: A PRACTITIONER'S GUIDE § 13.3, at 13-46-13-49 (2d ed. 2008).

The equitable remedy of rescission is available where the contract was materially breached and

that the parties can be returned to the positions they would have occupied at the time the

contracts were executed.  Alexian Bros. Health Providers Ass'n v. Humana Health Plan, Inc.,

277 F. Supp. 2d 880, 889 (N.D.Ill. 2003); see also C3 Techs., Inc. v. Fontana Mach. & Eng'g

Co., No. 90 C 1599, 1992 WL 97712, at *4-*5 (N.D.Ill. May 1, 1992) (rescinding agreement

where defendant was unable to reap any bargained-for-benefits of the agreement).

The inability to return the parties to their pre-contract positions, however, is not

necessarily a bar to a claim for rescission.  See Int'l Ins. Co., 609 N.E.2d at 853.  Factors that

courts consider to determine the materiality of a breach include: (1) whether the breach defeated

a bargained-for-objective; (2) whether the breach caused disproportionate prejudice to the non-

breaching party; (3) whether custom or usage shows the breach to be material; and (4) whether

allowance of reciprocal nonperformance would result in an unreasonable and unfair advantage to

either party.  Heritage Bank & Trust Co. v. Abdnor, 906 F.2d 292, 301 (7th Cir. 1990).

Rescission is warranted where the failure of performance "is of such a nature and of such importance that the contract would not have been made without it." C3 Techs., Inc., 1992 WL 97712, at *4 (quoting Ahern v. Knecht, 202 Ill. App. 3d 709, 563 N.E.2d 787, 792 (Ill. App. Ct. 1990)).

A contract is adequately supported by consideration where there is a bargained-for-exchange of promises or performances which is of benefit to one party or detriment to the other party. MAN Roland, Inc. v. Quantum Color Corp., 57 F. Supp. 2d 576, 582 (N.D. Ill. 1999); see also 13 CORBIN ON CONTRACTS, § 68.4(2) at 187 ("a bilateral contract is an agreement for the exchange of the performances that are promises. Each promise is consideration for the other promise.") In the instant case, CPSS has alleged the existence of a valid contract, supported by consideration, namely a bargained-for-exchange of promises. CPSS has alleged that FWS promised to design, develop, supply, and produce Projecto 6.0 (among other products) and to ensure that the software adequately performed; FWS allegedly failed to fulfill that promise. CPSS has alleged a failure of consideration and that the resulting breach was material, as it substantially deprived CPSS of the benefit of its bargain. CPSS contends that Projecto 6.0 was the core purpose of the Dealer Agreement. Accordingly, CPSS has stated an actionable rescission claim. FWS's motion to dismiss Count II is denied.

C.    **Counts III, IV, and V (CPSS's Counterclaims for Deceptive and Unfair Trade Practices under N.C. Gen. Stat. § 75-1.1, Misappropriation of Trade Secrets under N.C. Gen. Stat. § 66-152, and Common Law Unfair Competition)**

For reasons previously discussed in section II(A) above, Illinois law governs the tort claims concerning the parties' (non-)performance of obligations under the Dealer Agreement, and the Illinois Trade Secrets Act pre-empts common law claims stemming from the

18

misappropriation of trade secrets. Accordingly, the court dismisses <u>sua</u> <u>sponte</u> Counts III and IV

of CPSS's counterclaims, which are based on violations of North Carolina statutory law, and

Count V for unfair competition, as it is premised on misappropriation of trade secrets and

confidential information. To the extent that Counts III-V are based on the Cross-Marketing

Agreement, which contains a North Carolina choice of law provision, the Counts are also

dismissed for failure to meet the notice pleading standards of Rule 8(a)(2).

## IV.    CMHA's Motion to Dismiss Count II of FWS's Counterclaims

CMHA seeks dismissal of FWS's breach of contract counterclaim arising from the

Master License Agreement ("License Agreement") on two grounds: (1) that CMHA fails to state

a claim upon which relief can be granted because its claim rests on a non-existent confidentiality

provision; and (2) FWS's claim fails to meet the notice pleading standard set forth in Rule

8(a)(2) because FWS's short and plain statement fails to provide notice of what contract

provision CMHA allegedly breached. The court disagrees that FWS's counterclaim should be

dismissed.

At the outset, the court notes that the Agreement's North Carolina choice-of-law

provision is not in dispute. Accordingly, the court will apply North Carolina law in its review of

the merits of CMHA's breach of contract claim. To state a claim for breach of contract under

North Carolina law, a claimant must allege, (1) the existence of a valid and enforceable contract,

and (2) breach of the contract. <u>Poor v. Hill</u>, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). The

parties dispute whether CMHA's conduct breached terms of the License Agreement. FWS

alleges that CMHA breached the License Agreement "by wrongfully misappropriating and

delivering FWS's trade secrets and confidential information to its wholly-owned subsidiary,

CPSS, in order to permit CPSS to engage in competition with FWS." In its opposition brief, FWS argues that its counterclaim alleges that CMHA allegedly violated paragraph C(1) of the License Agreement, which permitted CMHA only to "install and use" Projecto, when it "misappropriat[ed] and reverse-engineer[ed] Projecto to create a competing product for [CPSS] to sell." CMHA asserts that the License Agreement imposed no confidentiality obligations on it. Moreover, CMHA asserts that paragraph A(36) of the License Agreement expressly permits the disclosure to and use of FWS's confidential information by CMHA's "Affiliates," entities owned or controlled by CMHA, such as CPSS.

To ascertain the merits of FWS's breach of contract counterclaim, the court must determine whether the terms of the License Agreement, particularly paragraphs C(1) and A(36), unambiguously prohibit, (a) CMHA from participating in the reverse engineering, decompilation, and disassembly of the licensed software, namely Projecto, and (b) CMHA from allowing its wholly-owned subsidiary, CPSS, to use the Projecto software. Interstate Narrow Fabrics, Inc. v. Century U.S.A., Inc., 218 F.R.D. 455, 462 (M.D.N.C. 2003) ("A contract is ambiguous if the differing constructions asserted by the parties are both reasonably supported by the language of the contract.").

Under paragraph C(1) of the License Agreement, FWS granted CMHA the following license:

> "Vendor grants to [CMHA] a perpetual, non-exclusive, non-transferable…license to install and use the Software and to use the documentation described in the applicable Purchase Order and any other written materials, brochures, instructions or documentation made generally available by Vendor relating to the Software."

The court agrees with FWS that the phrase "install and use" is not ambiguous and means downloading the licensed software (e.g., Projecto) onto computers so that the software can be

employed for the software's intended project management purposes. Pursuant to paragraph C(1), the bundle of rights granted to CMHA was not an assignment. Given the context and purpose of the agreement, no other meaning is reasonable.[11] To hold otherwise would place every other plain-vanilla software license in jeopardy. In light of the above, the court finds that FWS has stated an actionable breach of contract claim, by alleging conduct that violates terms of the License Agreement.

Finally, CMHA contends that FWS's breach of contract claim fails to meet the notice pleading standard set forth in Rule 8 because FWS's "short and plain statement" about "misappropriation of confidential information" fails to provide notice of what contract provision CMHA allegedly breached. CMHA also argues that it should not have to guess on which contract provision FWS's claim is based. A plaintiff's allegations must be specific enough to allow the defendant to draft a responsive pleading by giving the defendant fair notice of the claims and the basis for the claims. See Eli Research Inc. v. United Communs. Group, LLC, 312 F. Supp. 2d 748, 754 (M.D.N.C. 2004). Of course, at the motion to dismiss stage, a court is not testing the merits of the claim, but the sufficiency of the allegations. See id. In the instant case, FWS specifically alleges facts that put CMHA on notice that its use of FWS's trade secrets and confidential information was unjustified and exceeded the terms of the License Agreement. Further, CMHA responded to FWS's counterclaims and specifically denied the allegations without any requests for a more definite statement. CMHA's ability to respond to FWS's allegations belies its contention that FWS's allegations fail to provide fair notice of a breach of

---

[11] Even if the phrase "install and use" was ambiguous, such ambiguity and question of fact cannot be resolved by the court at the motion to dismiss stage. See Interstate Narrow Fabrics, Inc., 218 F.R.D. at 462.

contract claim.  Finally, CMHA cites to no proposition, and the court is aware of none, that requires a plaintiff to identify which contractual provision it believes was breached so long as the contract itself is identified.  Plaintiff has sufficiently stated a claim for breach of contract.

For the foregoing reasons, CMHA's motion to dismiss Count II of FWS's counterclaims is denied.[12]

## CONCLUSION

For the reasons stated above, the court grants CPSS's motion to dismiss FWS's Counts III (Violation of North Carolina Trade Secrets Act), IV (Deceptive and Unfair Trade Practices under N.C. Gen. Stat. § 75-1.1 et. seq.), and V (North Carolina Common Law Unfair Competition). FWS's motion to dismiss CPSS's counterclaims Count I (breach of contract) and Count II (rescission) are denied.  The court also dismisses CPSS's Counterclaims for Deceptive and Unfair Trade Practices under N.C. Gen. Stat. § 75-1.1 (Count III), Misappropriation of Trade Secrets under N.C. Gen. Stat. § 66-152 (Count IV), and Common Law Unfair Competition (Count V) sua sponte.  CMHA's motion to dismiss Count II (breach of contract) of FWS's counterclaims is denied.

The matter is set for status on July 23, 2009 at 9:00 a.m., at which time the parties may request leave to file amended complaints and counterclaims consistent with the rulings contained in this opinion.

**ENTER:**     **July 9, 2009**

_____

[12]Because the court has already determined that FWS has stated a claim for breach of contract, the court need not decipher the meaning of "Affiliate" and other terms in paragraph A(36) of the License Agreement.  Moreover, any possible ambiguity in those terms also warrants denial of CMHA's motion to dismiss.

_____

**Robert W. Gettleman**
**United States District Judge**